NOTICE
Decision filed 04/16/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180232-U

NO. 5-18-0232

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-802 |
| | ) | |
| BRENT COLE SR., | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where defendant's postconviction allegations failed to state the gist of a constitutional claim, and were meritless, defendant's appointed attorney on appeal is granted leave to withdraw as counsel, and the circuit court's summary dismissal of the defendant's postconviction petition is affirmed.

¶ 2   Defendant, Brent Cole Sr., entered into a fully-negotiated plea agreement with the State. Pursuant to the plea, defendant pled guilty to two counts of aggravated domestic battery. Defendant never sought withdrawal of his guilty pleas nor appealed the judgment of conviction. Nearly two years after pleading guilty, defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). The circuit court summarily dismissed his petition. Defendant now appeals from the summary dismissal. His appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), concluded this appeal lacks merit and,

1

on that basis, filed a motion to withdraw as counsel and a supporting memorandum of law. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Defendant filed a written response, requesting OSAD's motion be denied. Having examined and considered OSAD's motion, defendant's response, and the record on appeal, we conclude this appeal lacks merit. Accordingly, OSAD's *Finley* motion to withdraw as counsel is granted, and the circuit court's summary dismissal of defendant's postconviction petition is affirmed.

¶ 3                                         BACKGROUND

¶ 4      In July 2015, the State filed a four-count information against defendant for offenses committed against K.S. Count I charged him with criminal sexual assault in violation of section 11-1.20(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-1.20(a)(1) (West 2014)). Counts II, III, and IV charged him with aggravated domestic battery in violation of section 12-3.3(a-5) of the Code (720 ILCS 5/12-3.3(a-5) (West 2014)).

¶ 5      Defendant was taken into custody and bail was set at $750,000. Through counsel, defendant moved for a bail reduction. Following a hearing on the motion, and over the State's objection, the court reduced defendant's bail to $250,000.

¶ 6      In August 2015, the circuit court found that defense counsel had raised a *bona fide* doubt about defendant's fitness to stand trial and appointed Dr. Daniel Cuneo to evaluate defendant. Dr. Cuneo examined the defendant on September 24, 2015, and diagnosed defendant with left eye blindness, attention deficit hyperactivity disorder, cannabis dependence, cocaine dependence, and a learning disorder not otherwise specified. According to Dr. Cuneo, these conditions did not impair defendant's ability to understand the nature and purpose of the criminal proceedings or his ability to assist with his own defense. Dr. Cuneo further stated defendant understood the nature of the charges, the duties of the attorneys, judge, and jury, repercussions if found guilty, and the

2

concepts of plea bargaining and probation. Dr. Cuneo concluded that defendant was fit to stand trial. On October 5, 2015, the circuit court entered an order noting the parties' stipulation to Dr. Cuneo's qualifications and his conclusion that defendant was fit to stand trial. The court found defendant was fit to stand trial.

¶ 7 On January 11, 2016, defendant, his attorney, and an assistant state's attorney appeared before the Honorable Robert B. Haida. In response to queries from the court, defendant provided his age and education and confirmed he could read, write, and understand English. After further inquiry, defendant stated he was not under the influence of any drug or alcohol, although he had been prescribed psychotropic medication. The court asked the defendant to specify the drug(s) that he was taking. Defendant could not immediately recall the name(s) but eventually stated, "Prozac and something else." The court specifically asked defendant whether the medication "affected [his] ability to understand" where he was, what he was doing in court, and what the court was saying to him. Defendant confirmed it did not. Thereafter, the court asked defense counsel whether he had "seen any evidence that would suggest" that defendant's ingestion of psychotropic drugs might impair defendant's understanding of the day's proceedings, and counsel replied, "Quite the opposite, sir. I think they help."

¶ 8 The attorneys informed the court that they had reached a plea agreement, under which defendant would plead guilty to two counts of aggravated domestic battery, counts II and IV of the information, in exchange for a sentence of 6½ years' imprisonment and the dismissal of the remaining counts. In accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), the court read the four counts against defendant along with the possible penalties including the term of mandatory supervised release. The court further admonished defendant that he did not have to plead guilty, he had a right to either a jury trial or a bench trial, and he had a right to be present at

3

the trial. The court averred that a plea would waive the State's burden of proving his guilt beyond a reasonable doubt, his right to have his attorney cross-examine the State's witnesses against him, his right to present evidence, and his right to testify or not to testify. Defendant confirmed his understanding of all these matters.

¶ 9    The court asked defendant whether he had been promised anything outside the terms of the plea agreement or threatened in an attempt to persuade him to plead guilty, and defendant answered in the negative. At that point, the court asked the defendant, "Why are you pleading guilty?" He answered, "Because my daughter was murdered, and I'm trying to get back home to her." The exchange continued as follows:

> "THE COURT: Your daughter was murdered?
>
> THE DEFENDANT: The baby momma fell asleep on her.
>
> THE COURT: Okay.
>
> THE DEFENDANT: And I don't know if that was accident or how it went. I'm just trying to get back to her so I can visit the gravesite.
>
> THE COURT: Okay. And that's—
>
> [DEFENSE COUNSEL]: May I have a moment with my client, Your Honor?
>
> THE COURT: Yes.
>
> (At this time a discussion was held off the record.)
>
> THE COURT: I'm very sorry for your loss, but I'm not sure that I understand the connection between that and why you would plead guilty to these serious offenses.
>
> THE DEFENDANT: Because I'm guilty.

4

THE COURT: Okay. You think—and you think it's the best thing for you to do is to accept this plea negotiation so that ultimately—is that where the connection is so that you can serve your time and get out and then be able to grieve the loss of your baby?

THE DEFENDANT: Yes, sir."

¶ 10    The State then provided a factual basis, making clear that the victim in this case was a woman with whom the defendant had a child. Defendant pled guilty to counts II and IV of the information. The court found that defendant understood the nature of the charges, the possible penalties, his rights, and the consequences of pleading guilty, and further found that the guilty plea was voluntary and supported by a factual basis. The court accepted the pleas and the parties waived the preparation of a presentence investigation report.

¶ 11    In accord with the plea agreement, the court sentenced defendant to imprisonment for 6½ years, to be followed by 4 years of mandatory supervised release, on each of the two aggravated-domestic-battery counts with the two sentences to run concurrently. Defendant never moved to withdraw his guilty pleas or appealed the judgment of conviction.

¶ 12    On December 27, 2017, nearly two years after the guilty plea, defendant filed a *pro se* postconviction petition that provided as follows:

"The Honorable Judge Haida had aks [*sic*] me if I was on any meds that would keep me from thinking clearly. I tried to say that I was but Patrick Sullivan abridging my freedom of speech said something to 'the effect of' my meds or [*sic*] doing the exact opposite and he spoke for me 'I Guess' [*sic*] But he didn't know what meds I was on at the time. I was compelled in my criminal case to be a witness against my self. My Bail was excessive and I never got a bond reduction that he said that I had gotten. I never did!!"

5

¶ 13    The *pro se* postconviction petition was accompanied by, *inter alia*, defendant's one-page handwritten document that alleged that (1) he had wanted his attorney to inform Judge Haida that the attorney had spoken with the complainant, K.S., but the attorney did not so inform the judge; (2) the complainant, K.S., "had money on [his] books" and twice visited him in jail, although defendant never requested that she do so; (3) jail personnel allowed K.S. to visit him "without asking [him] if [he] was mentally competent to see her and [he] was not"; (4) in August 2015, K.S. killed defendant's infant daughter by sleeping on her; (5) "[he] wanted a cross-examination did [*sic*] at the hearing"; (6) his first amendment rights were "taking [*sic*] away" by his attorney; (7) his attorney was "ineffective due to the fact" that defendant was unfit to plead guilty as a result of his "meds" and grief; (8) "on the basis of [his] sex [he] was discrimanated aginst [*sic*]"; and (9) the State's failure to reduce his bond amounted to cruel and unusual punishment. On February 21, 2018, the court entered an order finding the postconviction petition "baseless on its face" and summarily dismissed it.

¶ 14                                              ANALYSIS

¶ 15    Defendant appeals from the circuit court's order summarily dismissing his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). As noted above, OSAD filed a *Finley* motion to withdraw as counsel, alleging defendant's claims are without merit. We agree.

¶ 16    The Act provides a three-stage procedural mechanism through which an imprisoned person may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Smith*, 2015 IL 116572, ¶ 9. A criminal defendant initiates a proceeding under the Act by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2016). "The petition shall *** clearly set forth the respects in which

6

[defendant's] constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2016).

¶ 17    At the first stage of proceedings, the trial court independently reviews the postconviction petition within 90 days of its filing and determines whether the petition should be summarily dismissed as frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). If the petition is neither, the claim is docketed for further consideration. 725 ILCS 5/122-2.1(b) (West 2016). A postconviction petition may be dismissed as frivolous or patently without merit only when its allegations—taken as true and liberally construed—fail to state the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 18    In other words, the petition may be dismissed "only if [it] has no arguable basis either in law or in fact. A petition *** lacks an arguable basis [when it] is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). To set forth a "gist" of a constitution claim, a defendant "need only present a limited amount of detail" and does not need to make legal arguments or cite to legal authority. (Internal quotation marks omitted.) *People v. Delton*, 227 Ill. 2d 247, 254 (2008). A "bare allegation" of a constitutional deprivation, however, does not qualify as the gist of a constitutional claim. *People v. Prier*, 245 Ill. App. 3d 1037, 1040 (1993). A *pro se* defendant is not excused from providing "any factual detail at all surrounding the alleged constitutional deprivation." *Delton*, 227 Ill. 2d at 254. We review the circuit court's summary dismissal *de novo*. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 19     In this case, defendant pled guilty to two counts of aggravated domestic battery and was sentenced pursuant to a fully-negotiated plea agreement. "It is well established that a voluntary guilty plea waives all nonjurisdictional errors or irregularities, *including constitutional ones*." (Emphasis added.) *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). For that reason, a defendant who voluntarily pleads guilty waives virtually all claims that can possibly be raised in a postconviction proceeding, except for claims attacking the plea itself as unknowing or involuntary. We therefore first address defendant's allegations relating to the validity of his guilty plea.

¶ 20     Four of defendant's postconviction claims concern the validity of his guilty plea. Defendant raises a dispute as to his fitness based on his medications and his grief due to his daughter's death. Two claims also assert trial counsel was "ineffective due to the fact" that defendant was unfit to plead guilty as a result of his "meds" and his grief, and for interfering with his freedom of speech at the plea hearing regarding the effect of his medication.

¶ 21     Defendant's narrative of the events at the plea hearing is contradicted by the record. The hearing transcript reveals that the court specifically asked the defendant whether his medications prevented him from thinking clearly, and the defendant answered, "No, sir." The court then asked him, "Are you sure?" and he answered, "Yes." Furthermore, the transcript reveals that defense counsel never attempted to silence the defendant or to block him from communicating with the judge. After defendant confirmed that his medications did not impair his thinking, the court asked defense counsel whether he observed anything suggesting the medications impaired defendant's understanding of the proceedings. Counsel responded, "Quite the opposite, sir. I think they help."

¶ 22     The record on appeal also contradicts the defendant's allegations that he was unfit to plead guilty due to a combination of his medications and his grief over the death of his young daughter in early August 2015. Dr. Cuneo evaluated the defendant's fitness for trial on September 24, 2015,

and ultimately opined that defendant was fit. On October 5, 2015, the circuit court made a finding that defendant was fit after the parties stipulated to Dr. Cuneo's qualifications and his finding of fitness. At the January 11, 2016, plea hearing, the circuit court carefully admonished and questioned defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012) and asked him specifically about prescription drugs, the death of his daughter, and his motivation for pleading guilty. Defendant stated that he wanted to plead guilty because he was guilty. He confirmed a desire to serve his prison sentence and be released so that he could mourn his daughter. Defendant fails to provide any further detail regarding how the death of his daughter precluded him from voluntarily pleading guilty, and nothing in the record suggests that defendant's medication or grief vitiated the knowing or voluntary character of his guilty plea.

¶ 23   Because the defendant's guilty plea was valid, it served to waive all other claims in the defendant's *pro se* postconviction petition. Moreover, we note, the remaining claims were either rebutted by the record or lacked factual detail surrounding the alleged constitutional deprivations.

¶ 24                                                   CONCLUSION

¶ 25   The record on appeal contradicts the defendant's postconviction claims that attacked the plea's validity, leaving those claims without any arguable basis. Defendant's valid guilty plea waived his additional claims. Waiver aside, none of those claims stated the gist of a constitutional claim either. Accordingly, this court hereby grants OSAD leave to withdraw as counsel and hereby affirms the circuit court's judgment summarily dismissing defendant's postconviction petition.

¶ 26   Motion granted; judgment affirmed.